THOMPSON, J.
This must be regarded as a bill filed to compel specific execution of an award concerning land, or of a bill to enforce the specific performance of a contract, under hand and seal, for the sale and purchase of a tract of land, and in either aspect the jurisdiction of a court of equity is alike unquestionable. I do not understand the counsel of the appellants as gainsaying this in their petition for appeal and assignment of errors or their arguments at the bar; but as insisting that this is not a proper case for the exercise of that jurisdiction, regarded in either aspect.
I. Because treating this as a bill in equity to enforce an award, it cannot on established principles be entertained — for the reason, that the arbitrators do not award a conveyance of the land, the award ascertaining nothing but the liability of Wood to pay a sum of money, and although a bill in equity be proper where an act is awarded to be done for which a complete remedy cannot be had at law, such as to make a conveyance, it will not lie to compel the execution of an award for the payment of money merely.
II. Because, had the award directed a conveyance, a court of equity would not enforce it, because of defects apparent in the award itself, which defects are alleged to consist in the invalidity of the submission and want of certainty and mutuality in the award. 1. An invalid submission, because made by one partner of several mercantile concerns, of the rights and liabilities of the several co-partners, and that too after a dissolution *of the co-partnership. 2. Want of certainty in the award itself, because the arbitrators do not award to whom the money shall be paid, whether to A. Shepherd, jr. or to the respective firms, and if to the latter, in what proportions to each. 3. Want of mutuality; for, conceding the validity of the submission as to the subjects in difference as well with the firms as with Shepherd, the award should have required, that upon the payment by Wood of the amount ascertained to be due from him, Shepherds & Co. should dismiss their suit, and the other parties who had judgment should enter satisfaction thereof; whereas, the award is altogether on one side, requiring Wood to do every thing and the other parties nothing.
III. Because treating it as a bill for specific execution merely, that is always addressed to the discretion of the court, and that discretion will not be exercised in favor of a claim based in whole or in part on an award which is liable to the objections before stated. At all events, specific execution should not have been decreed without clear proof that the plaintiff had complied with his part of the contract, by procuring and tendering to the defendant valid and perfect acquittances for all sums found due from said defendant to the said firms. The papers executed by A. G. Shepherd, and tendered and relied on as such valid and perfect acquittances, it is said, are insufficient, because there is no proof, except from his own declaration, that he ever was a member of either of the firms of Shepherds & Hartsook or Shepherds & Co. —still less, that on the 14th October, 1845, *806 these firms, or either of them, were in existence. On the contrary, it is said, it is apparent they had been dissolved, and that .there is no evidence in the record that A. G. Shepherd had a right to grant acquit-tances and discharges in their names. And yet, without requiring the members of these firms to be brought before the court, without evidence of any release by them of their claims on the defendant, the court has required him to execute a *deed for and surrender the possession of his land upon receiving a credit on the award of said arbitrators for the sum of $2,000. Suppose this decree executed, and what, is there, it is asked, in this record to prevent the other members of the firms aforesaid, Hartsook and Nelson, and we know not who else, from holding the defendant responsible to them for their proportions of every dollar of this same money? The decree in question, it is said, affords the defendant no sort of protection against the claims in satisfaction of which he is required by its terms to strip himself, it may be, of his whole estate.
The articles of the 5th September, 1844, contain not only an agreement of submission to arbitrament, but a distinct and substantive contract for the sale and purchase of a tract of land, containing a certain quantity of acres, at a specified price; to wit, four hundred acres, at the price of $2,000, (which is $5 per acre,) “towards paying which sum the amount found due by the arbitrators or umpire as aforesaid from said Wood, whether to said Shepherd, Jr., or to any of said firms, shall first be applied — the said Shepherd, jr. procuring and delivering to Wood valid and perfect acquittances for all the sums found due from him to said firms. And the said Shepherd, jr. shall paj to Wood the residue of the said $2,000 in cash, upon Wood’s making him a complete title to the said land and delivering him possession.” Its design, then, was to accomplish a twofold purpose: first, the ascertainment by arbitrament and award the indebtedness of Wood to A. Shepherd, jr., and the several concerns of which he was a member ;■ and, secondly, the sate and purchase of a tract of land, which would supply the means of liquidating the indebtedness thus ascertained ; but which of these purposes was the primary and which the secondary, which the principal and which the incidental, whether, the submission -to arbitration was the inducement to the sale or the sale the inducement to the submission, and whether so ^'dependant aftd indissolubly blended and connected, as to form but parts of one entire contract, so as that both must, be consummated or neither, is certainly a question which would be worthy of consideration if it were material to the decision of this cause. Without meeting that question, I am content to concede that the agreement to submit to arbitration, and the contract of sale and purchase are so dependent and indissolubly connected, that both must be consummated or accomplished or neither; and that, therefore, we must consider this as a bill filed for specific execution of an award involving, incidentally, specific execution of a contract for the sale of land, or a bill for specific performance of a contract for the sale of land involving incidentally specific execution of an award. And so considering, I can perceive no objection to the relevancy of the alternative errors assigned, based upon that twofold aspect of the case, and will proceed to consider briefij- their validity or tenability.
I. Treating it as a bill in equity to enforce an award, it is objected, that the arbitrators do not award a conveyance, but ascertain nothing but the liability of Wood to pay a sum of money, and that a bill will not lie to compel the execution of an award for the payment of money. The answer to this objection is, that the only question referred to the arbitrators was the extent of Wood’s liability or indebtedness to A. Shepherd, jr., and the several firms of which he was a member,' — that being ascertained, their duties ceased,' — -they were functi officio — and the agreement of the parties for the sate and purchase of the land steps in and directs the application of that liability or indebtedness, and how it is to be extinguished by the sale and conveyance of land.
II. It is objected, that had the award directed a conveyance, a court of equity would not enforce it, because defects appeared in the award itself. This objection is based upon an inadmissible hj'pothesis, for the reasons stated in answer to the first objection; *and is irrelevant in the form in which it is stated; but I will consider it as if it had objected to a court of equity decreeing the conveyance stipulated for in the contract, because of defects apparent in the award itself. Three defects are specified: 1st, the invalidity of the submission; 2d, want of certainty in the award, and 3d, want of mutuality. If the omissions, which form the subject of objection in the 2d and 3d specifications of defects, were properly imputable to the arbitrators, they are manifestly of such an immaterial and merely technical or formal character, as to render them of no avail, and wholly inadequate to vitiate the award, according to the modern and more enlightened doctrines which prevail on the subject of arbitrament and award. But, in truth, the arbitrators have been guilty of no omissions. They have responded to and fulfilled the whole duty imposed upon them, nothing more, nothing less, when they ascertained and reported or awarded the indebtedness of Wood to the appellee and the partnerships mentioned in the submission, and the indebtedness of them or any of them to him. At that point their duties and powers terminated, and the contract of the parties commenced its office. It was no part of the duty or the province of the arbitrators to award to whom and in what proportions the money should be paid, nor to award and direct the dismission of the pending suit, and the acquittance or entry *807 of satisfaction of the judgments. By complying with the award in the manner prescribed in the agreement, and after compliance on the part of the appellee with the terms and conditions imposed on him, Wood would, ipso facto, have acquired a virtual dismission of the suit, and a virtual acquittance or discharge from the judgments.
The only defect which deserves more than a passing notice is the first, which is founded on the alleged invalidity of the submission. It is argued, that one partner, whether of a dissolved or an existing firm, although clothed with an authority implied from the partnership delation, to receive debts and grant ac-quittances and releases, has no such authority to submit the rights of his co-partners to arbitration so as to bind them by the award. And that, as the appellee in this case submitted to arbitration the rights of his co-partners without their authority or consent, they could not be bound by the award, and that as they were not bound, neither was the appellant, the submission being void for want of mutuality of obligation. Although the counsel of the appellee cited two American cases, which affirm the power of one partner, whether of a dissolved or existing firm, to submit and to bind by the submission to arbitration and award the rights of co-partners, without their authority and consent, I think it very clear, both upon reason and the authority of the adjudged cases and of the text-writers adduced by the counsel of the appellants, that one partner cannot bind the rights of his associates by submission to arbitration and award without their authority or consent; but I differ toto coelo with the counsel in the conclusions the}’ would deduce in this case from the nonexistence of power in one partner to bind the rights of his co-partners by submission.
It is certainly not a very obvious con sequence, that because those who do not submit are not bound by the award, those who do should not be. On the contrary, the very reverse of this proposition would, at the very first blush, seem to be the most reasonable. Wood and Shepherd had the perfect right and the full power to bind themselves whilst they could not bind the outstanding co-partners. Shepherd was beyond question irrevocably bound. There is nothing wrong or unusual for one man to submit for himself and another, taking upon himself the peril of his dissent or non-acquiescence. Hence, it is laid down in Russell on the Duty and Power of Arbitrators, 63d vol. of Law Library, p. 27, upon the authority of Bac. Abr. Comyn’s Dig. and adjudged cases there cited: “If a man submit for himself and his partners all matters in difference between *the partnership and another, the partner submitting shall be bound to perform the ward, but the other shall not, because he is a stranger to the award. If, however, the latter refuse, it is a breach of the submission by the partner who agreed to the reference.” And in another place, on p. 28: “In general, a man is bound by an award which he submits to for another. ’ ’ And if Shepherd be bound, why should not Wood likewise? Every man is presumed to know the law; but in this case we are not left to presumption as to whether Wood, or the learned counsel who ,drew the article, knew it. The instrument itself, on its face and in its terms, demonstrates that Wood knew the other partners were not bound by the submission, and took care to guard himself against the consequences of their non-acquiescence, by requiring ac-quittances from them, as a condition precedent to his conveying to Shepherd his land. After he had entered into the submission, with a full knowledge of its invalidity as to the outstanding co-partners, guarding himself against the consequences in addition to the recourse the law would give him against Shepherd for a breach of the submission, in the event of the dissent from or disaffirmance of the award by them —a submission too by which Shepherd was absolutely and irrevocably bound — would it not be palpable and manifest injustice, if not fraud, to allow him to take the chance of an award in his favor, and failing in that, to claim to set aside the whole proceedings for a defect in the submission, of which he had full cognizance when he entered into it?
I am of opinion, therefore, that the first and second assignment of errors, treating this as a bill to enforce the award, and alleging objections or defects, both in the submission and the award, are untenable. And it has not been intimated that there is the least ground for impeaching the award upon the merits.
III. Upon the third and last question presented by the petition for appeal and assignment of errors, I am of opinion, that whilst it was manifestly proper for the *court to decree specific performance of the contract for the sale and purchase of the land, involving incidentally the specific execution of the award, it erred in doing so upon the acquittances tendered by Shepherd and appearing in the record, being of opinion that they are not such perfect and .valid acquittances as Wood stipulated for as a condition precedent to his making a conveya.nee of his land. The proof in the record is not satisfactory as to who all constituted the firms of Shepherds & Hartsook, Shepherds & Co., and Shepherds / & Nelson. There may have been other members than the two Shepherds, Hartsook and Nelson; nor is the proof sufficient as to A. G. Shepherd being a partner in all the three concerns, nor is there any prbof of his authority to make the assignments, which were tendered and received by the court as sufficient' and valid acquit-tances ; for although it be conceded that every partner, whether of a dissolved or existing firm, as authority, implied by law from the relation of the parties, to collect, receipt for, assign, and, if you choose, release partnership choses and liabilities if done in the bona fide and legitimate course *808 of partnership transactions on partnership account, and for the use and benefit of the partnership, it would be a preversion and abuse of that implied authority, and, I might add, an express authority, to allow one partner to assign to another the partnership assets to be applied to the individual purposes and uses of the assigned partner. It would be a breach of trust in both the assignor and assignee, and void as to the other partner. And such is the character of these assignments, apparent on the face of the transaction' — the one assigned and the other received the assignment, with knowledge of the forbidden purposé; unless, which does not appear, though I think very probably was the fact in this case, A. Shepherd, jr. was the owner of these debts, or if not, A. G. Shepherd was authorized, by the other partners to make these transfers, for this specific purpose.
The decree must, therefore, be reversed, and remanded *to the circuit court for further proceedings, with instructions, (there being already in the record sufficient acquittances of the two Shepherds,) if the appellee can and will in a reasonable time, to be determined by the discretion of the court, procure and file valid and sufficient acquittances of Hart-sook and Nelson, and any other outstanding partners of the three firms aforesaid, if any such there be, releasing and discharging Wood from all liability to them for an account of his indebtedness to said concerns, which were the subject of the submission and award and thereby appropriated to the individual purposes of A. Shepherd, jr., to repeat the same decree, or a decree similar to that heretofore rendered and now reversed for the reasons hereinbefore stated.
CEOPTON and NASH, Judges, concurred with THOMPSON, J.
TYLER, J-
I am for affirming the decree, because, if there be any objection to the acquittances, no objection having been made to their character in the court below, I think it is too late to make the objection here.
DECREE.
The court is of opinion, that the decree of the circuit court is erroneous, because of the invalidity and imperfection of the acquittances procured, exhibited and filed by the appellee in the court below, upon the sufficiency of which to protect the appellant against the claims of the partners not bound by the submission and award the said decree was predicated, and that it is erroneous for that cause alone. It is therefore decreed and ordered, that the same be reversed and annulled, and that the appel-lee do pay unto the appellant his costs by him expended in the prosecution of his appeal aforesaid here. And this cause is remanded to the Circuit Superior Court of Eluvanna for further proceedings, to be had therein in conformity with the decree and opinion of the court, with instructions to allow the appellee a *reasonable time to procure and file perfect and valid acquittances of all the partners of the three firms of Shepherds & Hartsook, Shepherds & Co. and Shepherds & Nelson not bound by the submission and award, to wit: Hartsook & Nelson, and others, (if there be others than the two Shepherds, as to whom their acquittances appearing in the record are deemed sufficient to conclude them;) and if the appellee can and will, in such'reasonable time as may be prescribed, procure and file such acquittances, then to repeat the same decree, or render, a decree similar to that heretofore pronounced by said court; and upon the failure of the ap-pellee to procure and file the requisite ac-quittances in the time prescribed or allowed him for that purpose, to dismiss his bill at his costs.
Decree reversed.